James R. Denlea (ct27831)
Peter N. Freiberg (ct27554)
DENLEA & CARTON LLP
One North Broadway, 5th Floor
White Plains, NY 10601
(914) 920-7400
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------------X
SUSAN M. QUINN,

                              Plaintiff,                        Civil Action No.

       -against-

                                                          **COMPLAINT**

STANLEY PETER FISHKIN and
LEE S. SHALOV, ESQ,

                              Defendants.
-------------------------------------------------------------------X

       Plaintiff, Susan M. Quinn ("Quinn" or "Plaintiff"), by and through her undersigned attorneys, as and for her Complaint against defendants Stanley Peter Fishkin ("Fishkin") and Lee S. Shalov, Esq. ("Shalov") (together with Fishkin, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

       1.       By his action, Plaintiff seeks recompense for Fishkin's brazen scheme to dupe her into investing virtually all of her life savings into risky, start-up hedge funds which provided kick-backs to Fishkin, taking advantage of the parties' prior personal relationship and Plaintiff's lack of sophistication in the world of finance and investments, ultimately resulting in the loss of nearly all of Plaintiff's life savings.

2. Devastated by Fishkin's misconduct, Plaintiff turned to attorney Shalov to pursue a lawsuit against Fishkin, entitled *Quinn, et al. v. Stanley Fishkin, et al.*, Civil Action No. 3:09-CV-845-JBA (D. Conn.) (the "Underlying Action").

3. However, Shalov, who took the matter on a contingency basis, added insult to injury by advising Plaintiff to accept a paltry settlement and withholding from Plaintiff key information concerning Fishkin's ability to satisfy a much larger, and inevitable, award against him.

4. Believing Shalov to be acting in her best interests, on or about June 17, 2010, Plaintiff entered into a settlement agreement (the "Settlement Agreement") with Fishkin, enabling her to recoup less than 5% of her losses.

5. Critically, the Settlement Agreement provides that, in the event that Fishkin's financial disclosures in the Underlying Action prove to be materially inaccurate or incomplete, Plaintiff has the right to declare the Settlement Agreement null and void.

6. Because such information has come to Plaintiff's attention, Plaintiff so declares, and reasserts her earlier claims against Fishkin based on his improper and unlawful self-dealing. Moreover, Plaintiff seeks recompense for her former attorney's negligence and breach of his fiduciary and professional obligations owed to her, by, *inter alia*, pressuring Plaintiff to settle her claims against Fishkin for pennies on the dollar.

## PARTIES

7. Plaintiff is an individual residing in Fairfield, Connecticut.

8. Defendant Fishkin is an individual residing in the State of Vermont. Upon information and belief, he was not and is not licensed as a broker and/or investment

advisor in Connecticut.

9. Defendant Shalov is an individual residing in the State of New York. Shalov is an attorney who previously represented Plaintiff in the Underlying Action.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTS

12. At all times relevant to this action, Plaintiff was self-employed part-time, attending school, raising two children with learning disabilities, recently divorced, and living mostly off of her savings.

13. In or around 2001, Fishkin, who had long been a personal friend of Plaintiff, purporting to be a financial advisor, approached Plaintiff about the possibility of managing her money.

14. Plaintiff, who Fishkin knew to be unsophisticated in the world of finance and investments, was a cautious investor with a low risk tolerance. Her primary concern with respect to any investment was to preserve her principal, as she depended on her savings for her financial survival.

15. Plaintiff conveyed her investment objectives and risk aversions to Fishkin, who, as a long-time friend, knew Plaintiff was self-employed part time and raising two

3

children with disabilities, knew that she was dependent upon her savings, and knew that Plaintiff's former husband had taken charge of Plaintiff's finances during her marriage.

16. Thus, suggesting he was doing her a favor, Fishkin told Plaintiff that he would not charge any fees for his advisory services until the value of her account with him exceeded $5 million.

17. Trusting Fishkin, Plaintiff agreed to allow him to manage her money, although no investment advisory contract was ever effectuated.

18. Ultimately, Plaintiff came to discover that her trust had been misplaced and that Fishkin had breached his fiduciary and other duties owed to Plaintiff by, *inter alia*, self-servingly investing her money with start-up, unproven hedge funds from which Fishkin received a "finder's fee" of as much as 20% of Plaintiff's investment.

19. Notwithstanding the blatant impropriety of these kick-backs, the very investment in these fledgling hedge funds was at odds with Plaintiff's stated risk-aversion.

20. However, Fishkin falsely represented to Plaintiff the nature of her investments. Specifically, Fishkin advised Plaintiff that Stewardship Credit Arbitrage Fund LLC ("Stewardship"), with which Fishkin invested $1.5 million of Plaintiff's money, was a "real steady Eddie" with a long "track record" of success. In fact, Fishkin invested Plaintiff's money with Stewardship soon after the firm's inception, when it had no "track record" at all.

21. Moreover, contrary to Fishkin's representation to Plaintiff that her investments through him were highly diversified, and that Stewardship itself was a highly diversified "fund of funds," Stewardship, into which the majority of Plaintiff's

4

principal was invested, in turn invested the majority of its investment capital in short-term notes issued by Thomas J. Petters and Petters Group Worldwide, LLC, and its subsidiaries and affiliates (together, "Petters").

22. This concentrated investment put Plaintiff's portfolio at considerable risk, a risk that materialized in 2008 when the Federal Government discovered that the notes sold to Stewardship, among others, were part of a $3 billion Ponzi scheme perpetrated by Petters.

23. As a result, the value of Plaintiff's $1.5 million investment with Stewardship, and the earnings that had accrued on that investment, evaporated.

24. Had Plaintiff known the true nature of Stewardship's business, she would never have agreed to invest the majority of her savings with it. Critically, not only did Fishkin fail to disclose the true risk of the investment, he actively sought to preclude Plaintiff from obtaining this information by advising her not to read offering memoranda and other materials provided by Stewardship and, in some instances, by failing to even provide those materials to Plaintiff.

25. As a result of Fishkin's repeated breaches of his fiduciary and other obligations, Plaintiff has lost millions of dollars, and continues to struggle to meet her daily living expenses.

26. In early 2009, Plaintiff turned to defendant Shalov to represent her in recovering her losses. Shalov, apparently contemplating a quick and significant recovery based upon Plaintiff's considerable losses and Fishkin's obvious liability, agreed to take the matter on a contingency basis.

27. Thus, Plaintiff executed an engagement letter whereby Shalov would be

5

entitled to 25% of any recovery obtained by Plaintiff.

28.  Thereafter, on or about April 9, 2009, Shalov, on behalf of Plaintiff and another investor, Marsha Wiggins, initiated the Underlying Action against Fishkin and Crow Hill Capital, Ltd. ("Crow Hill"), in the Superior Court of the State of Connecticut, Judicial District of Stamford, asserting claims for breach of fiduciary duty, professional negligence, violations of investment advisory registration requirements, sale of securities by an unregistered broker-dealer, and unjust enrichment.

29.  On or about May 26, 2009, Defendants removed the Underlying Action to this Court, where it was assigned Civil Action No. 3:09-CV-845-JBA.

30.  Shortly after the commencement of the Underlying Action, Fishkin, through his attorneys, began to cry poverty, threatening bankruptcy as a result of the action Plaintiff was taking, and the imminent demise of his marriage, and to seek a negotiated resolution.  Thus, discovery was focused upon Fishkin's finances and ability to pay a judgment, and mediation was scheduled (after at least one adjournment) for early 2010.

31.  Court records indicate that Fishkin produced approximately 5,000 pages of financial documents to Shalov.  However, the only document that was actually disclosed by Shalov to Plaintiff was **one page** of a July 31, 2009 financial statement indicating that Fishkin had total assets of approximately $468,000, liabilities of $1,313,067, and a net worth of negative $844,704. Unfortunately, Shalov did not disclose the entire financial statement to Plaintiff, but only disclosed to her one page of it, withholding from her consideration all other pages of the financial statement that contained other information she should have been advised about. Shalov refused to let

Plaintiff keep a copy of the one page of the financial statement even though Plaintiff made repeated requests to Shalov that she be provided with a copy of that one page.

32. This financial statement does not take into account Fishkin's real estate interest in his sprawling mountain top residence in Vermont (worth approximately $3.4 million), his cash accounts, or his interest in Crow Hill Ventures, Ltd. These assets were reflected only in the notes on the other pages of Fishkin's financial statement – pages which Shalov did not provide to Plaintiff.

33. The financial statement that was provided to Shalov was unaudited, and in fact the accountants that prepared it stated: "A compilation is limited to presenting in the form of financial statements information that is the representation of the individual whose financial statement is presented. We have not audited or reviewed the accompany statement of financial condition and, accordingly, do not express an opinion or any other form of assurance on it." Thus, the financial statement that Fishkin produced was not worthy of credence, yet Shalov failed to require audited financials or other documents that would have been more credible. Plaintiff requested that Shalov obtain more documentation substantiating Fishkin's claimed poverty because she was aware of his lavish lifestyle, but Shalov failed to do so.

34. Additionally, Shalov failed to disclose to Plaintiff that Fishkin had earned over $3.7 million in income between 2004 and 2007, a critical fact that would have influenced Plaintiff in deciding whether to accept the settlement for such a paltry sum. Shalov had been provided with Fishkin's tax returns for these four years showing that he had earned this income, but did not relay that information to Plaintiff.

35. Shalov also failed to disclose to Plaintiff that Fishkin's companies (Crow

7

Hill Capital and Crow Hill Ventures) had together earned ordinary income after expenses of approximately $2.9 million between 2004 and 2007.  Shalov had been provided with tax returns for these two companies showing that the companies had earned this income, but did not relay that information to Plaintiff.

36.     Also, even though the settlement was not agreed to until July 2010, Shalov failed to obtain copies of Fishkin's 2009 tax returns, and did not obtain from Fishkin a more recent financial statement that could have shown his financial status at, or very near, the time that he advised Plaintiff to settle.  Shalov's advise to Plaintiff to settle her case against Fishkin was based upon outdated and stale financial information.  Nor did Shalov obtain an affidavit or oral testimony from Fishkin that the Financial Statement and related materials he provided were accurate and complete.

37.     Thus, based upon Shalov's failure to disclose key information, Plaintiff believed Fishkin's net worth to be far less than it actually was.

38.     Shalov, who apparently lost interest in pursuing Plaintiff's action after learning it would not be the easy fight he had anticipated, used this skewed financial picture to pressure Plaintiff into settling her claims against Fishkin.  After Shalov received his 25% contingency fee, Plaintiff received only $75,000.00, a steep discount of Plaintiff's actual losses.

39.     Thus, on or about June 17, 2010, Plaintiff executed a Contingent Confidential Settlement Agreement and General Release (the "Settlement Agreement").  The Settlement Agreement provides, in relevant part, that:

> The parties hereto represent and declare that in executing this Agreement they rely solely upon their own judgment, belief and knowledge and the advice and recommendations of their own independently chosen counsel,

8

>if any, concerning the nature, extent and duration of their rights and claims hereunder and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by the other party or any persons representing the other party ***except as to the material accuracy of the financial statement dated July 31, 2009 and related material of Fishkin provided to the Plaintiffs. In the event the financial statement and related materials are found by a court to have been materially inaccurate/incomplete, the Plaintiffs shall be permitted to declare this Agreement null and void and shall be permitted to reinstitute their lawsuit provided that it is filed before July 31, 2014*** with the amount paid credited against any recovery, or returned to Defendant Fishkin if no recovery is received.

Settlement Agreement, § 10 (emphasis added).

40. The July 31, 2009 Financial Statement that Fishkin produced was materially inaccurate. Fishkin did not disclose, or did not adequately disclose: (a) that he had formed the limited liability company Mountain Top Farm Consulting, LLC and was the only principal of that company; (b) that he had made an investment with Split Rock Ventures, LLC; and (c) that he had an ownership or partnership interest in various businesses such as Starlight, LP, Sanders Morris Harris, Inc., the Furman Selz Holdings Liquidating Trust, and Vantagepoint Communications Partners, LP. Furthermore, Fishkin did not disclose that he had a financial interest in Acorn Capital Group, which served as a financial conduit between Petters Group Worldwide, LLC and Stewardship, and that he was receiving revenue from Acorn Capital Group.

41. Pursuant to §10 of the Settlement Agreement, Plaintiff seeks an order of the Court determining that the financial statement and related material that Fishkin disclosed were materially inaccurate/incomplete, so that Plaintiff can declare the Settlement Agreement null and void, and reinstate her claims, as set forth below, against Fishkin.

9

## Count I:
## Breach of Fiduciary Duty
## (as against defendant Fishkin)

42. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "41" above, as if fully set forth herein.

43. Fishkin owed and breached his fiduciary duty to Plaintiff. As set forth above, the relationship between Plaintiff and Fishkin was characterized by a unique degree of trust and confidence. As between them, Fishkin clearly possessed superior knowledge, skill and expertise in regards to financial matters and investments and thus owed a duty to represent and protect Plaintiff's interests.

44. As a result of his misconduct and self-dealing, Fishkin breached his duties owed to Plaintiff by, *inter alia*, investing her money in start-up hedge funds that provided kick-backs to Fishkin, rather than investments consistent with Plaintiff's stated risk tolerance and conservative investment goals.

45. As the proximate result of Fishkin's breach of his fiduciary duties, Plaintiff has suffered damages, having lost the majority of the monies she invested through Fishkin (in an amount yet to be determined, but in excess of $1.5 million).

## Count II:
## Professional Negligence
## (as against defendant Fishkin)

46. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "45" above, as if fully set forth herein.

47. Fishkin owed Plaintiff a duty of care, fair dealing and good faith (among others) in connection with, *inter alia*, his obligations to: (i) invest Plaintiff's money in a manner consistent with her stated risk tolerance and investment goals and objectives;

10

and (ii) conduct adequate due diligence into (and, thereafter, to monitor and periodically reevaluate) the funds in which he invested Plaintiff's money.

48. Fishkin breached his duties owed to Plaintiff by failing to invest her money in a manner in accordance with her stated risk tolerance and objectives. Further, Fishkin failed to conduct reasonable due diligence into the funds in which he invested Plaintiff's money and, thereafter, failed to monitor and periodically reevaluate those funds in light of Plaintiff's investment needs.

49. As the proximate result of Fishkin's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

### Count III:
### For the Sale of Securities by an Unregistered Investment Advisor
### (as against defendant Fishkin)

50. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "49" above, as if fully set forth herein.

51. In connection with his misconduct described herein, Fishkin acted as an "investment advisor" within the meaning of § 36b-3 (11) of the Connecticut General Statutes.

52. During the relevant time period, Fishkin was not registered in the State of Connecticut as an investment advisor.

53. Because Fishkin was not registered as an investment advisor, Plaintiff is entitled under § 36b-29 of the Connecticut General Statutes to any loss (in an amount yet to be determined, and to be proven at trial) resulting from the investment advisory services provided by Fishkin.

## Count IV:
### For the Sale of Securities by an Unregistered Broker-Dealer
### (as against Defendant Fishkin)

54. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "53" above, as if fully set forth herein.

55. In connection with his misconduct described herein, Fishkin acted as a "broker-dealer" within the meaning of § 36b-3(5) of the Connecticut General Statutes.

56. During the relevant time period, Fishkin was not registered in the State of Connecticut as a broker-dealer.

57. Because Fishkin was not registered as a broker-dealer, Plaintiff is entitled under § 36b-29 of the Connecticut General Statutes to recover the amount she paid for the securities purchased through Fishkin, together with interest at eight percent per year from the date of payment, plus costs and reasonable attorneys' fees (less the amount of any actual income received on the securities), upon tender of the securities or, to the extent Plaintiff no longer owns any of the securities, for the damages in an amount to be determined at trial.

## Count V:
### For Unjust Enrichment
### (as against Defendant Fishkin)

58. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "57" above, as if fully set forth herein.

59. Fishkin financially benefitted from his unlawful acts as alleged herein, including through the receipt of finder's fees and kickbacks, to Plaintiff's detriment.

60. As a result of the foregoing, equity and good conscience require restitution.

## Count VI:
## For the Imposition of a Constructive Trust
## (as against defendant Fishkin)

61. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "60" above, as if fully set forth herein.

62. Fishkin had a fiduciary relationship with Plaintiff which included an obligation to invest in legitimate investments, to perform adequate due diligence, and to invest Plaintiff's money consistent with her financial goals and objectives.

63. Fishkin was compensated, in part, in the form of kickbacks and other fee-sharing awards that were calculated based on the profits and financial state of the investment funds to which Fishkin steered Plaintiff's money.

64. Fishkin was unjustly enriched by the retention of such kickbacks and other awards.

65. Plaintiff is entitled to have a constructive trust imposed on the amount of all monies and other property of Fishkin that relates to his compensation in the form of kickbacks and other fee-sharing awards, the amount of which is yet to be determined.

## Count VII:
## Legal Malpractice
## (as against defendant Shalov)

66. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "65" above, as if fully set forth herein.

67. In early 2009, Plaintiff retained Shalov to initiate the Underlying Action against Fishkin.

68. In or about June 2010, attorney Shalov, acting in his own self-interest rather than his client's best interest, advised and pressured Plaintiff to settle the

13

Underlying Action for a fraction of Plaintiff's damages.

69. In doing so, Shalov withheld from Plaintiff key information regarding Fishkin's finances and property holdings. Furthermore, Shalov did not obtain all information relevant to Fishkin's financial condition when advising Plaintiff to settle.

70. Had Plaintiff been aware of this information, she would not have agreed to settle her action against Fishkin for the amount she received.

71. Plaintiff reasonably relied on the advice of Shalov in deciding to settle.

72. As a proximate result of her reliance on Shalov's advice, Plaintiff has been damaged in an amount to be proven at trial. Shalov's negligent failure to obtain all documentation related to Fishkin's true financial condition, and his failure to disclose to Plaintiff all of the information he had obtained, was a substantial factor in causing loss to Plaintiff.

## COUNT VIII:
## Breach of Fiduciary Duty
## (as against defendant Shalov)

73. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" though "72" above, as if fully set forth herein.

74. In early 2009, Plaintiff retained Shalov to initiate an action against Fishkin.

75. As her attorney, Shalov owed Plaintiff a duty of loyalty and was obligated to act in her best interests.

76. In or about June 2010, Shalov, apparently having realized that achieving a significant recovery against Fishkin would not be as quick and easy as he had anticipated, withheld from Plaintiff key information regarding assets, income and property owned by Fishkin, leading Plaintiff to believe that Fishkin had a negative net

worth.

77.     Based upon this misinformation, Plaintiff agreed to settle her claims against Fishkin for a mere fraction of her loss.

78.     Upon information and belief, Shalov chose to withhold this information from Plaintiff in order to achieve a swift settlement, rather than to expend the time and resources necessary to pursue a greater recovery against Fishkin.

79.     As the direct and proximate result of Shalov's misconduct, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Susan M. Quinn requests judgment against Defendants as follows:

A.      An award of compensatory and punitive damages against Defendant Fishkin, in an amount to be determined at trial;

B.      An award of compensatory and punitive damages against Defendant Shalov, in an amount to be determined at trial;

C.      An award that Defendant Fishkin and Defendant Shalov are jointly and severally liable to the damages awarded to Plaintiff

D.      An award imposing a constructive trust on the amount of all monies and other property of Fishkin that relates to his compensation in the form of kickbacks and other fee-sharing awards, the amount of which is yet to be determined;

E.      Disgorgement of the legal fee paid to Shalov;

F.      An award of costs, disbursements and attorneys' fees to the fullest extent permitted by law; and

G. Granting such other relief as the Court deems just and proper, together with interest, attorneys' fees, costs and disbursements incurred in connection with this action.

A JURY TRIAL IS DEMANDED.

Dated: White Plains, NY
July 30, 2014

        DENLEA & CARTON LLP

        By: /s/ James R. Denlea
           James R. Denlea (ct27831)
           Peter N. Freiberg (ct27554)
           One N. Broadway, 5th Floor
           White Plains, NY 10601
           (914) 920-7400
           *Attorneys for Plaintiff Susan M. Quinn*